UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
YOLANDA UVIDIA,

                          Plaintiff,                      **MEMORANDUM**
                                                                 **AND ORDER**
                                                                  CV 14-6028 (ARL)

      -against-

KOHL'S DEPARTMENT STORES, INC.,

                          Defendants.
-----------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       This litigation arises from an incident that occurred on May 7, 2012, at the Bay Shore Kohl's Department Store. At approximately 1:15 p.m., the plaintiff, Yolanda Uvidia ("Uvidia"), was stopped, questioned and detained by employees of the defendant, Kohl's Department Stores, Inc. ("Kohl's") because she was suspected of shoplifting. Uvidia alleges that Kohl's subjected her to racial profiling, discrimination, false imprisonment and malicious prosecution. Compl., ¶ 1. Before the court is the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I.    Factual Background

       The following facts are drawn from the pleadings, Kohl's Local Rule 56.1 Statement, and the parties' papers submitted in support of or in opposition to the instant summary judgment motion. The facts cited are undisputed unless otherwise noted. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). Here, the facts are construed in the light most favorable to Uvidia.

On May 7, 2012, Uvidia went to the Kohl's store located at 2040 Route 27 in Bay Shore, New York. *See* Def. 56.1 Stmt., ¶ 3; Compl., ¶6. While she was at the store, Uvidia tried on a pair of jeans in the store's fitting room, but elected not to purchase the pants because it did not have a price tag, and she did not wish to wait for a sales associate to obtain a price check. Compl., ¶ 7. She did, however, purchase three child size blouses. *Id.* As she was leaving the store, Uvidia alleges that she was "grabbed" by security personnel Natisha Whitton ("Whitton") and Alfrie Pena ("Pena"), and "rushed" back to the dressing room where she was asked to remove an article of clothing she was wearing called a Flexee. Goldstein Aff., Ex. A, Inter. 4; *see also* Harding Aff., ¶¶ 6- 8.[1]

According to the Incident Report, Whitton had observed Uvidia selecting three black Flexees from the Women's Accessories/Hosiery Department before she entered the dressing room. *See* Goldstein Aff., Ex. B. Uvidia was then observed exiting the dressing room several minutes later and placing two Flexees on the rack and what was believed to be a tag for the third Flexee in a pair of jeans in the Misses Department. *Id.* Whitton stated in the report that she maintained continuous surveillance as Uvidia purchased the blouses and exited the front of the store without attempting to pay for the Flexee. *Id.* Whitton stopped Uvidia outside and asked her to return to the store, which, according to Whitton, she did voluntarily. *Id.* Whitton further reported that after the police arrived, Uvidia was accompanied into the dressing room where she removed the Flexee she was wearing. *Id.* Uvidia insisted that she had previously purchased the Flexee from Kohl's. *Id.* The Flexee had a value of $36.00. Harding Aff., ¶14.

---

[1] Whitton and Pena are no longer employed by Kohl's. Harding Aff., ¶ 6.

According to the evidence, before Whitton and Pena stopped Uvidia outside, one of them contacted Clint Harding ("Harding"), the store's Lost Prevention Supervisor, and asked him to report to the Loss Prevention Office. *Id.*, ¶6. Harding's version of the events differs slightly from Whitton's. Harding avers that when he arrived to the office, he observed Uvidia exiting the dressing room. *Id.* Harding recalls that it was he who remained in the Loss Prevention Office to continuously watch Uvidia on camera, while Whitton left to search the fitting room. *Id.* Harding further avers that either he or Pena observed Uvidia putting the Flexee(s) back on the rack and that Whitton found the tag for the Flexee in the dressing room. *Id.*, ¶6. According to the incident report, the tag was recovered by Harding from a pair of jeans in the Misses Department. *See* Goldstein Aff., Ex. B. Harding also recalls being told by Whitton that Uvidia had entered the dressing room with two, not three, Flexees and that none were found in the fitting room. Harding Aff., ¶ 10. Harding further attests that at no time did any employee put a hand on Uvidia or make any derogatory comments towards her. *Id.*, ¶9. Finally, according to Harding, Uvidia was apprehended at 1:12 p.m. and released at 2:00 p.m., during which time she was interviewed by the Suffolk County Police who were called to the store. *Id.*

Uvidia tells a different story. She says that, far from returning to the store voluntarily, store security had grabbed her wrists and took her into the security room. *See* Goldstein Aff., Ex. A, Inter. 4. She also claims that male guards searched her Kohl's bags and a female guard searched her purse, but were unable to locate any stolen goods. *Id.* Uvidia claims that she was confined for two hours before the Suffolk County Police was called to the store, during which time guards tried to coerce her to sign a confession. *See id.*, Inter. 3. Uvidia was not arrested but she was issued a desk appearance ticket before she was released. Defs. Rule 56.1, ¶ 4, Harding Aff., ¶8. She was charged with a petit larceny in violation of New York Penal Law 155.25,

which, according to the Complaint, was dismissed on October 13, 2013. *See* Goldstein Aff., Ex. A, Inter. 16; Compl., ¶21.

## II.     Procedural History

Uvidia commenced this action on October 14, 2014. Kohl's filed its answer on November 14, 2014. By Order dated January 15, 2015, the Court established July 14, 2015, as the deadline for the completion of all discovery, and July 28, 2015, as the deadline for the commencement of dispositive motion practice. DE 8. On March 5, 2015, the parties consented to the undersigned's jurisdiction for all purposes, and a few days later, Kohl's filed a motion seeking to compel the plaintiff to respond to its discovery demands. According to Kohl's, it served Uvidia with various discovery demands in January, including Kohl's First Set of Interrogatories, but despite counsel for the plaintiff's assurances that responses would be forthcoming, Uvidia had utterly failed to engage in discovery. In fact, Uvidia did not even respond to the motion to compel. Accordingly, the motion was granted, as unopposed, and Uvidia was directed to respond to all outstanding requests and to provide her Rule 26 automatic disclosures by April 15, 2015.

Thereafter, on April 28, 2015, Kohl's filed a second motion seeking to dismiss the complaint based on the plaintiff's failure to comply with the discovery demands and the court's prior order. According to Kohl's counsel, Uvidia's response to the Interrogatories were received two weeks after the court ordered deadline, but she had failed to respond to any other discovery demands. DE 13. In response to the motion, Uvidia's counsel explained that Uvidia was unable to verify the Interrogatories until April 21, so he did not forward the response to Kohl's counsel until April 24, 2015. Counsel further explained that the delay in providing discovery was due to factors outside of his control:

4

> Plaintiff is Ecuadorian and Spanish-speaking. She speaks very
> little English and at the time Plaintiff retained this office to
> represent her, this office had Spanish-speaking clerical staff that
> aided counsel in translating documents and information.
> Unfortunately, earlier this year Plaintiff's staff changed and this
> office faced difficulty in facilitating Plaintiff's verification of
> Interrogatories and acquiring the necessary and relevant discovery
> information. Furthermore, this office had additional difficulty
> getting in touch with Plaintiff through conventional telephonic
> means.

DE 15. While the court was concerned with Uvidia's failure to conduct discovery in a timely manner, the court was not prepared to grant dismissal at that time. Instead, the Court directed the parties to meet and confer to discuss any outstanding discovery requests. In addition, Uvidia was ordered to respond to all outstanding requests within two weeks of the meet and confer. Despite the court's direction, plaintiff's counsel did not serve any timely discovery demands.[2] On July 31, 2015, Kohl's served the plaintiff with its Rule 56.1 statement and filed the fully briefed summary judgment motion on November 13, 2015. Although counsel for the plaintiff filed his own affidavit and affirmation in opposition to the motion, to date, the plaintiff has not filed a Rule 56.1 Counter Statement nor has Uvidia offered any evidence in opposition to the motion.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] The plaintiff served Kohl's with her First Set of Interrogatories and Document Requests on December 15, 2016, five months after the close of discovery and one month after the defendant had filed the fulled briefed motion for summary judgment. The defendant has correctly ignored the untimely requests.

of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. Analysis

*A. The Plaintiff's Procedural Failures*

Uvidia has not submitted a declaration or affidavit in opposition to Kohl's motion. Indeed, counsel makes no attempt to provide support for the factual assertions contained in his affidavit, except for the occasional reference to the complaint. The submission of counsel's own statement, which he claims was made with personal knowledge, was an inappropriate response to the defendant's motion for summary judgment, and the factual assertions made therein must be disregarded. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 440 n.12 (E.D.N.Y. 2013) ("Unsworn letters and statements made without personal knowledge are not admissible evidence under Rule 56 of the Federal Rules of Civil Procedure and cannot be considered in connection with a summary judgment motion.").

In addition, Uvidia failed to follow the directives of Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"). Local Rule 56.1 provides as follows:

> The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.

Local Civil Rule 56.1(b). Uvidia did not respond to Kohl's' Local Rule 56.1 and has submitted no evidence in opposition to the motion. Nonetheless, the Court has not automatically deemed the defendant's facts admitted and has exercised its discretion to review the limited record

independently. *See Awan v. Durrani*, No. 14-cv-4562, 2015 WL 4000139, at *1 n.3 (E.D.N.Y. July 1, 2015).

### B. The Plaintiff's Ripeness Argument

Uvidia's primary opposition to the motion rests on the fact that she was not given the opportunity to complete discovery. Specifically, Uvidia argues that the motion should be denied as premature because "Rule 56(e)(1) permits the Plaintiff to properly support or address any facts yet to be asserted." Moore Aff., ¶ 3. Uvidia also argues that Rule 56(f) "safeguards against the inappropriate granting of summary judgment."[3] The plaintiff's arguments are misplaced. "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). "This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* In this case, the plaintiff was given an ample opportunity to conduct discovery, and despite several orders addressing the plaintiff's failure, Uvidia chose not to do so. Accordingly, the court rejects the plaintiff's procedural arguments and turns to the merits of her claims.

---

[3] Fed. R. Civ. P. 56(f) provides that: "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. Fed. R. Civ. P. 56(f). The rule was not intended to shield parties who fail to conduct discovery from the grant of summary judgment.

## C. Section 1981 Claim

Uvidia alleges that Kohl's has deprived her of the same right to make and enforce contracts that White citizens of the United States enjoy because of her race, ethnicity and national origin in violation of 42 U.S.C. § 1981. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim pursuant to § 1981, a plaintiff must establish that (1) she is a member of a racial minority; (2) the defendant intended to discriminate against her on the basis of her race, ethnicity or national origin; and (3) the discrimination concerned one or more of the statutorily enumerated activities. *See Sharp v. 74 Eldert Funding Inc.*, No. 16 CV 2491 (AMD) (RLM), 2016 WL 3877869, at *4 (E.D.N.Y. July 12, 2016)(citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). "The enumerated activities include the right 'to make and enforce contracts.'" *Id.* (citing 42 U.S.C. § 1981); *Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 313 (E.D.N.Y.2004)(plaintiff's claim that store security singled her out for inspection based on a discriminatory basis sufficient to survive motion at the Rule 12 stage). In addition, where, as here, the plaintiff has asserted "a selective-enforcement claim[4], there must be some evidence of "' purposeful and systematic discrimination' 'in the form of specific instances when members of a recognized group were" "singled . . . out for unlawful oppression in contrast to others similarly situated.'" Bishop v. Toys R Us-NY, LLC, No. 04 CV 9403 (PKC), 2009 WL

---

[4]Although the plaintiff has not specifically characterized her claim as a selective prosecution claim, she alleges that she was deprived of the right to equal protection when Kohl's, motivated by racial bias and animus, detained her for shoplifting. Compl, ¶ 11.

9

440434, at *6 (S.D.N.Y. Feb. 19, 2009), aff'd sub nom. Bishop v. Toys R Us, 385 F. App'x 38 (2d Cir. 2010)(citing *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir.1988)). Finally, section 1981 requires a plaintiff to "come forth with [some] evidence of discrimination, because this element distinguishes a section 1981 claim from a state-law tort." *Id.* (citing *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir.2004) (evidence of discriminatory intention essential to a section 1981 claim)); *Yusuf v Vassar College*, 35 F. 3d 709, 713 (2d Cir. 1994)(naked assertions of racial motivation will not suffice).

Here, Uvidia alleges that the fact that she is Hispanic and from Equador played a role in the underlying events; however, Uvidia has failed to point to any evidence suggesting that Kohl's conduct had anything to do with her race or national origin. In addition, the records is devoid of any evidence that Kohl's had a custom of racial profiling and discrimination. Uvidia has offered no reason to suspect that her detention at Kohl's had anything to do with her race or national origin, but the evidence in the record does identify a number of other, race-neutral factors that may have led Kohl's employees to believe that she had taken the Flexee, including the fact that a store employee observed Uvidia bringing three black Flexees into the dressing room and exiting the dressing room with two Flexees and the fact that she was seen placing what was believed to be a tag for a Flexee in a pair of jeans in the Misses Department. *See* Goldstein Aff., Ex. B. The possible reasons for Kohl's actions combined with the lack of any specific factual support for her claim of a discriminatory motivation illustrates that her claim here are nothing more that "naked allegations." *See Drayton v. Toys "R' Us Inc.*, 645 F. Supp. 2d 149, 161 (S.D.N.Y. 2009)(plaintiffs conclusory allegations that he was intentionally discriminated against because of [his] dreadlocks were insufficient, as a matter of law, to give rise to an inference of discrimination).

Moreover, Uvidia was not prevented from purchasing merchandise in the store. Courts that have addressed section 1981 claims in the context of retail transactions have held that after a purchase is complete, there is no continuing relationship with respect to section 1981. *See e.,g., Nevin v. Citibank*, N.A., 107 F. Supp. 2d 333, 349 (S.D.N.Y. 2000)(Section 1981 claim dismissed where plaintiff had purchased everything she desired at both the Lord & Taylor and Charisma stores). Therefore, Uvidia's claim under Section 1981 must be dismissed.

*D. Section 1985(3) Claim*

Uvidia has also asserted a claim under section 1985(3). Specifically, Uvidia claims that Kohl's engaged in a conspiracy to deprive her of equal protection under the laws by engaging in a pattern of targeting non-White shoppers for suspicion and false accusations of shoplifting. Compl., ¶¶ 26-32. In support of their motion for summary judgment, Kohl's argues that Uvidia has presented no evidence to establish that the employee or management of Kohl's had any agreement to conspire against Uvidia, and that, in any event, her claim must be dismissed because all that is alleged is an intra-corporate conspiracy. Kohl's Mem. at 11-13.

Section 1985(3) provides, in pertinent part:

> If two or more persons in any State . . . conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . ; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

11

42 U.S.C. § 1985(3).[5] The Supreme Court has also explained that, "a conspiracy is actionable under section 1985(3) when it is 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Emanuel*, 724 F. Supp. at 1098-99.

To state a cause of action under the deprivation clause of 1985(3), a plaintiff must allege (1) a conspiracy, (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Friends of Falun Gong v. Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003), aff'd sub nom. *Friends of Gong v. Pac. Culture*, 109 F. App'x 442 (2d Cir. 2004). Although the conspiracy need not be shown by an explicit agreement, establishment of a § 1985(3) claim requires proof of a conspiracy between "two or more persons." *Jones v. J.C. Penney's Dep't Stores, Inc.*, No. 03-CV-920A, 2007 WL 1577758, at *19 (W.D.N.Y. May 31, 2007), aff'd sub nom. *Jones v. J.C. Penny's Dep't Stores Inc.*, 317 F. App'x 71 (2d Cir. 2009)(citing *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.1995)). Specifically, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). For this reason, a plaintiff cannot establish "a conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting

---

[5]"The Supreme Court has held that section 1985(3) itself has no state action requirement and thus reaches private conspiracies, despite language in the statute that appears to suggest otherwise." *Emanuel v. Barry*, 724 F. Supp. 1096, 1098-99 (E.D.N.Y. 19890)(citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.1978); *Prescod v. American Broadcasting Companies, Inc.*, 1979 WL 242, *4 (S.D.N.Y. May 16, 1979)).

Here, Uvidia contends that "high ranking security executives, security managers and store security agents [conspired] to deprive Hispanic, African American/Black and other non-White persons of the equal protection of the laws and equal privileges and immunities under the laws," *see* Compl., ¶ 11, but the record is devoid of any evidence establishing an agreement between any of Kohl's employees and another person or entity. In fact, Uvidia's sole factual allegation is that she was accosted by three security personnel and falsely imprisoned because of Kohl's pattern and practice of racially profiling. Moore Aff., ¶¶ 12, 15. Indeed, in what can best be described as an acknowledgment of the lack of conspiratorial evidence, Uvidia suggest that she intends to seek discovery, if permitted, to establish a connection between Kohl's and the State in order to establish her section 1985 claim. However, nothing in the current record supports the plaintiff's 1985(3) conspiracy claim. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)( "[A] complaint containing only conclusory, vague, or general allegations of the conspiracy to deprive a person of constitutional rights cannot [even] withstand a motion to dismiss). In short, Uvidia's vague allegations, unsupported by specific facts of any kind, fail to state a plausible conspiracy claim, and thus, the defendant's motion to dismiss the plaintiff's claims pursuant to Section 1985 must also be granted.

*E. The Court Declines to Exercise Supplemental Jurisdiction Over Uvidia's Remaining State Law Claims.*

The three remaining claims in this action arise under the laws of the State of New York, namely, false imprisonment, malicious prosecution, and intentional infliction of emotional

distress. 28 U.S.C. §1367 governs the Court's exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Section 1367(c)(3) states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Courts must determine whether to continue to exercise supplemental jurisdiction 'at every stage of the litigation.'" *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013)(citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir.1998)." Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). Although this case is not in the early stages of litigation, the plaintiff has conducted no discovery and her state law claims require interpretation of state law. Thus, the interests of fairness, comity and efficiency counsel for the litigation of these remaining claims in a state forum. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Accordingly, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## CONCLUSION

Based on the foregoing, the defendant's motion for summary judgment is granted and the action is dismissed. The Clerk of the Court should be directed to close the file.

Dated: Central Islip, New York  
September 26, 2016

**SO ORDERED:**

_____/s_____  
ARLENE R. LINDSAY  
United States Magistrate Judge